**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **THOMPSON POWER CORPORATION, a** ) | |
| **Tennessee Corporation and a division of** ) | |
| **Thompson Machinery Commerce Corporation,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 3:09-cv-564** |
| ) | |
| **MILLENNIUM TILES, LLC, an Illinois LLC, and** ) | **Judge Thomas A. Wiseman, Jr.** |
| **WALTER HAUK, Individually,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

Plaintiff Thompson Power Corporation ("Thompson") filed this action against defendants Millennium Tiles, LLC ("Millennium") and Walter Hauk ("Hauk") (collectively, "Defendants") alleging that the stainless steel roof tiles manufactured by Defendants and purchased by Thompson for installation on a house being constructed in the Bahamas failed shortly after their installation. Thompson seeks damages for breach of contract against Millennium, and for negligent and intentional misrepresentation and violation of the Tennessee Consumer Protection Act ("TCPA") against both Defendants.

Defendants have now filed their motion for summary judgment, seeking judgment in their favor as a matter of law and dismissal of all claims against them. Defendants assert specifically that (1) Thompson's claims are barred by the one-year statute of limitations set forth in Millennium's limited warranty; (2) the limited warranty requires that any disputes under the parties' purchase order be settled by binding arbitration; (3) even if suit were timely, Thompson's remedies are limited by the warranty to repair and replacement of defective product; and (4) with respect to the misrepresentation claims, there is no evidence that Hauk knowingly made any false representation of fact or that he was negligent in conveying information to Thompson and further, that the TCPA claim is barred by its one-year statute of limitations. For the reasons set forth herein, the Court concludes that material issues of disputed fact preclude summary judgment as to any of the claims asserted in this action.

## I. FACTUAL BACKGROUND

Plaintiff Thompson Power Corporation is a Tennessee corporation with its principle place of business in Lavergne, Tennessee. Defendant Millennium Tiles, LLC is an Illinois limited liability company

with its principle place of business in Elcorn, Wisconsin.  Defendant Walter Hauk is an Illinois citizen and the principle owner of Millennium.  The amount in controversy exceeds $75,000, and this Court's diversity jurisdiction extends to the dispute.

This suit arises from Thompson's purchase from Millennium of certain stainless steel roofing tiles, to be installed on a vacation residence being constructed for Thompson in the Bahamas.  Although Hauk assured Thompson's agent, architect Larry Brown, that the colorized stainless steel type 304 tiles ("T304 tiles") recommended by Hauk were appropriate for a coastal setting and would be resistant to corrosion, the T304 tiles began corroding immediately upon their installation.

More specifically, there is no dispute that, beginning in the fall of 2006 and continuing through 2007, Thompson entered into an agreement with Millennium to purchase electrically coated stainless steel T304 roof tiles to be installed on a residence Thompson was having constructed on Abaco Island, Bahamas (the "Bahamas residence").  The projected cost of the building was approximately $6 million; and the cost of the roof alone was over $100,000.  The dwelling was to be used primarily as a vacation-type home and occasionally used for business.

The plans for the building were prepared by Nashville architect Larry Brown on behalf of Thompson.  In his deposition, Stephen Lainhart, General Manager for Thompson, testified without equivocation that Larry Brown made the decision to use the Millennium tiles.  (Lainhart Dep. 21:14–18.)  It is clear that Brown, in selecting the tiles, was acting on behalf of and as agent for Thompson.

Although no Thompson employee ever reviewed any promotional or advertising materials for Millennium before Thompson purchased the Millennium tiles, Larry Brown reviewed materials regarding Millennium's products and had several communications with defendant Walter Hauk prior to settling on the Millennium tiles for installation on the roof of the Bahamas residence.  According to Brown, he was aware that Millennium had a fifty-year warranty on its roofing materials.  Hauk mentioned it to him and Millennium's website also stated that Millennium's products were backed by a fifty-year warranty.  The terms and conditions of sale and Millennium's standard warranty are available on Millennium's website, but Brown never looked at them until well after the sale had been completed.

Brown did look at and print out the Product Guide Specifications on Millennium's website, and saw that, under § 2.2, Stainless Steel Roofs, the Specifications state that stainless steel "Type 316 has

greater corrosion resistance than type 304 and should be specified for installations exposed to sea water and salt air." (Brown Dep. 28:1–16.) Brown testified that he was familiar with stainless steel type 316 ("T316") because it was used in the manufacture of certain "fasteners" he had used on a project. Brown testified that, based on his having read that T316 tiles were indicated for installations exposed to salt air, he expected Millennium, and Hauk, to recommend the T316 tiles. He first understood that Hauk proposed selling to Thompson the T304 tiles when Hauk sent him a Proposal or "budget quote." Shortly thereafter, Brown called Hauk to discuss why the Proposal indicated T304 instead of T316 tiles, and Hauk assured him that he had that type "all over the world" and he was "totally confident" in the ability of the T304 tiles to "hold up" in a salt-air environment. (Brown Dep. 30:8–31:2.) Brown stated that he chose T304 tiles instead of the T316 tiles only because Hauk recommended the T304 tiles, and specifically told Brown that the electrochemical process with which the T304 tiles are treated improves the corrosion resistance of the T304 steel to the point where it is as good as or better than the T316 steel. (Brown Dep. 29:17–22; 36:8–14.) The T304 tiles are less expensive than the T316 tiles, but the cost differential had no effect on Brown's decision to use the T304. Brown repeatedly confirmed in his deposition that the decision was based instead entirely on his "total trust" in Hauk and Hauk's "knowledge of stainless steel and his product." (Brown Dep. 46:3–5.) Hauk admits he recommended the T304 steel to Brown for an oceanfront location and avers that lab testing had showed the colorized T304 steel was "equivalent or superior to" the T316 steel. (Defs.' Ans. Interrog. 4 & 5, Doc. No. 24-4, at 2; *see also* Hauk Aff. ¶¶ 10–11.) Although he clearly knew that the tiles were to be used at a coastal property in the Bahamas, Hauk contends, somewhat confusingly, that Brown "did not inform Millennium Tiles of the unique environmental conditions of the project cite." (Defs.' Ans. Interrog. 5.)

As pertains to Thompson's allegations of negligent or intentional misrepresentation on the part of Hauk, Hauk has submitted his affidavit in which he attests that: (1) he advised Brown that the colorized T304 tiles had been used and had performed satisfactorily in a number of tropical and coastal applications; (2) those representations were true; (2) he relied on an independent analysis performed by a German company, Poligrat GMBH ("Poligrat"), which showed colorized T304 stainless steel to be equivalent to uncolored T315 steel alloy in terms of corrosion resistance, and he exercised reasonable care in obtaining and communicating the information he provided to Brown. (Hauk Aff. ¶¶ 10–13.) Hauk,

however, does not have any documentary evidence of the purported independent analysis. For its part, Thompson points to evidence in the record to suggest that, although Millennium's per-tile profit would have been greater had Thompson ordered the T316 tiles, Millennium did not maintain an inventory of T316 tiles and would have had to order a coil of T316 steel sufficient to make double the number of tiles Thompson actually needed, and therefore could have incurred losses on the project, at least in the short run, if Thompson had ordered T316 tiles. Thompson also points to its expert's opinion that, contrary to Hauk's representations, the T304 steel is *not* equivalent to the T316 steel, and is both unfit for an ocean-side environment and inferior to the T316 for that purpose.

In support of Defendants' motion for summary judgment on the breach-of-contract claim, Steve Holeczy, Millennium's sales manager, attests via affidavit that he personally prepared the purchase orders that accompanied the shipments of tiles to Thompson. Holeczy further insists that "he personally included a copy of Millennium Tiles, LLC's limited warranty and terms and conditions with the purchase order." (Holeczy Aff. ¶ 7.) Included with Holeczy's Affidavit are copies of Millennium's "Limited Warranty" and "Terms & Conditions," the latter of which purports to be "an integral part" of the Purchase Order. Also attached as an exhibit to Holeczy's Affidavit is a copy of a Purchase Order. At the bottom of the Purchase Order, Stephen Lainhart's signature appears beneath the statement "Your Signature verifies and accepts this statement, our warranty and our terms & conditions."

According to Lainhart, however, he had never read or even seen the Warranty or the Terms & Conditions when he signed the Purchase Order. (Lainhart Dep. 26:15–21.) Specifically, Lainhart testified that "to [his] knowledge," Thompson "was never delivered a copy of the warranty on any of the shipping materials or any of the purchase order materials." (Lainhart Dep. 27:24–28:2.) In signing the Purchase Order, he simply assumed "that the terms and the warranties [would] cover the product as we expected to be covered." (Lainhart Dep. 26:25–27:2.) He testified that it was only after Thompson began having problems with the roof that he and Larry Brown "struggled to find" the warranty and were able to find it on Millennium's website. (Lainhart Dep. 27:10–12.) There is no dispute that the warranty was available at all relevant times on Millennium's website.

Lainhart further attests that he received all Millennium's purchase orders via e-mail, although Hauk believes Millennium's practice was to fax Purchase Orders to customers. Lainhart's practice was to

print the e-mails, sign and scan them and then e-mail them back to Millennium. He reiterates, in his Affidavit, that he does not recall receiving a copy of a written warranty attached to any of the purchase orders he received from Millennium. The record does not contain a copy of the warranty or terms and conditions signed or initialed by any agent or employee of Thompson, nor is there an e-mail chain or fax receipt confirming or even suggesting that Millennium provided copies of either document to Thompson.

The question of whether Thompson received the Limited Warranty and Terms and Conditions as part of the Purchase Order is important because these documents, if they apply, contain significant limitations on the plaintiff's ability to recover in this case. Specifically, the Terms & Conditions require any action against Millennium related to Millennium's products that are the subject of the Purchase Order be brought within one year after the cause of action accrues, and limit Millennium's liability to the amount paid by the purchaser for the roofing system. The Limited Warranty disclaims any other warranties, express or implied, including the implied warranties of fitness for a particular purpose and merchantability, and excludes consequential, special or incidental damages of any kind. The Limited Warranty further provides that, in the event of manufacturing defects, Millennium's liability is limited to either repair or replacement of defective parts, plus shipping, freight and packaging from Millennium. Finally, both the Terms & Conditions and the Warranty require any dispute be settled by binding arbitration in the City of Chicago.

In March or April 2008, shortly after installation of the roof was completed, Steve Lainhart called Walter Hauk to inform him that Thompson was having problems with the tiles. A series of communications thereafter ensued. Brown testified in his deposition that he knew no later than June 13, 2008, approximately four months after installation of the roof was completed, that the roof tiles were not performing as expected. Hauk asked Lainhart to send a sample roof tile for testing. Lainhart complied, and Millennium sent the tile sample to Poligrat in Germany for testing. Hauk sent Brown an e-mail with the results of the test in June 2008, explaining that, according to Poligrat's verbal report to him, the tiles were not defective but had failed as a result of exposure to iron filings, due to improper installation, and exposure to unusual salt deposits. Apparently unsatisfied with Millennium's proposal for rectifying the problem, Thompson subsequently sent a tile sample to Catherine Houska, a metallurgical engineering consultant with Technical Marketing Resources, Inc., to request her assistance in identifying and

remedying the problem. In a report returned to Thompson on July 28, 2009, Houska opined that the problems were not caused by metal filings, and that "[d]espite claims made by the supplier, the stainless steel provided is not equivalent to Type 316." (Doc. No. 24-2, Houska Report.) Thompson asserts that, until it received Houska's report, it was not aware that it had a potential claim against Defendants.

The record does not reflect when, if at all, Thompson made a specific demand of Millennium that it either honor its warranty or correct the problems with the tiles.

Thompson filed its complaint in this action on June 18, 2009.

## II.      STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When reviewing a motion for summary judgment, this Court must view the facts and any reasonable inferences drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The party opposing summary judgment, however, must present more than a "mere scintilla" of evidence; the evidence must be such that a reasonable jury could find in favor of the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## III.     ANALYSIS AND DISCUSSION

### A.      Breach-of-Contract Claim

Defendants argue that they are entitled to summary judgment on Thompson's breach-of-contract claim on the basis that the claim is barred by the one-year statute of limitations contained in Millennium's Limited Warranty. Defendants further point out that, even if the suit is deemed timely, Thompson's remedies are stringently limited by the Terms & Conditions and the Warranty, and that any dispute regarding the roofing tiles is required to be settled through binding arbitration in Chicago, Illinois. In anticipation of Thompson's argument that it never received a copy of either the Limited Warranty or the Terms & Conditions, Defendants contend that (1) Lainhart signed the Purchase Order acknowledging acceptance of those documents, and that Thompson cannot be excused from compliance with the terms of the written agreement merely because its agents failed to read the agreement before signing it; and (2) in any event, the warranty was available on Millennium's website. In response, Thompson argues that (1) the website did not make the warranty reasonably available as required by law, and (2) even if Thompson

is deemed bound by the Limited Warranty, its cause of action did not "accrue" until it received Houska's report in July 2008, less than a year before it filed suit.

As an initial matter, the Court finds that there is a material issue of disputed fact as to whether Millennium provided the Limited Warranty and Terms & Conditions to Thompson at all. One party insists it sent the documents. The other party denies receiving them. The mere fact that Lainhart signed the Purchase Order does not establish his receipt of the other documents. The cases cited by Defendants regarding a contract signatory's obligation to read a contract before signing it are not on point, given the dispute as to whether Thompson ever received the Limited Warranty and Terms & Conditions at all. The availability of the Warranty on the website is likewise beside the point. Under Tennessee's version of the Uniform Commercial Code, disclaimers of the implied warranties of merchantability and fitness for a particular purpose "must be by a writing and conspicuous." Tenn. Code Ann. § 47-2-316(2). The existence of a warranty on the seller's website is not sufficiently "conspicuous" to satisfy this requirement. *See also Dewberry v. Maddox*, 755 S.W.2d 50, 55 (Tenn. Ct. App. 1988) ("Because the buyer is completely relying on the skills of the vendor-builder in this situation, we think that in order to have a valid disclaimer of the implied warranty, it must be in clear and unambiguous language. The buyer must be given 'adequate notice of the implied warranty protections that he is waiving by signing the contract.'" (citation omitted)).

Moreover, the question of whether the Limited Warranty and Terms & Conditions formed part of the parties' contract is not necessarily dispositive of Thompson's breach-of-contract claim because the evidence in the record is unclear as to when exactly Thompson's cause of action "accrued." Thompson maintains that its claim did not accrue until July 2008 when it received Catherine Houska's report refuting Millennium's explanation for the failure of the roofing tiles and also revealing her judgment that the T304 steel was not equivalent to the T316 steel. Defendants insist that Thompson's cause of action accrued in March or April 2008, when Lainhart first noticed a problem with the tiles or, at the latest, by June 13, 2008 when Larry Brown became aware that the tiles were failing.

Neither party's position is supported by the law. Under the UCC, the default limitations period for a breach-of-contract action is four years, but the parties may by agreement reduce the period of limitation to not less than one year. Tenn. Code Ann. § 47-2-725(1). Thus, if a jury finds that the Limited Warranty

was effectively delivered and formed part of the parties' bargain, then Thompson's claims will be subject to a one-year statute of limitations. By statute, a cause of action for breach accrues "when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." Tenn. Code Ann. § 47-2-725(2). "A breach of warranty occurs when tender of delivery is made, *except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.*" *Id.* (emphasis added).

The Tennessee Supreme Court had the opportunity to construe that passage in *Paskell v. Nobility Homes, Inc.*, 871 S.W.2d 481, 484 (Tenn. 1994), in which the court held that when a warranty explicitly extends to future performance, a cause of action does not accrue until the seller refuses to honor its obligations under the warrant, and the plaintiff discovers that breach. However, the court noted in that case that "a warranty to merely 'repair is not one that explicitly extends to future performance of the goods.'" *Id.* (quoting *Poppenheimer v. Bluff City Motor Homes*, 658 S.W.2d 106, 111 (Tenn. Ct. App. 1983)). In *Poppenheimer*, the Tennessee Court of Appeals cited *Shapiro v. Long Island Lighting Co.*, 71 A.D.2d 671 (N.Y. App. Div. 1979), which held that claims for damages caused by failure of a water heater were barred by the four-year statute of limitations, despite the existence of a warranty that "guaranteed" the water heater "for 10 years against tank failure" and promised "a complete replacement water heater if the tank develops a leak within 10 years after installation." *Id.* at 949. The court noted:

> Because the contract warranty is good for 10 years by its own terms, it is evident that it survives the four-year Statute of Limitations in some respects. The seller has promised to replace a defective unit for 10 years and that promise is undoubtedly enforceable by the buyer.
>
> A fair reading of this express warranty as a whole, however, shows that it promises only replacement, nothing more. It has been held that an agreement to repair does not amount to an explicit warranty of the future performance of the goods.

*Id.* at 950. The court therefore affirmed dismissal of plaintiff's claim for damages caused by the water heater's leakage.

Based on the above-referenced case law, this Court concludes that the express fifty-year duration of the warranty (assuming, again, that the Limited Warranty applies) means that a cause of action for breach of the warranty to repair or replace defective parts extends into the future. Under *Paskell*, a cause

of action for breach of a warranty to repair or replace does not accrue until the seller refuses to honor its obligations. It is not entirely clear from the record before the Court (1) whether the parts at issue are actually "defective"[1] or (2) when or whether Defendants refused to honor the warranty to replace or repair the such defective tiles. The Court presumes that such a refusal likely would not have happened—because Thompson likely did not make any type of demand—until sometime after Thompson had a basis for believing that the tiles themselves were defective or, at the very least, were not performing in accordance with Hauk's guarantee. Thompson obtained that knowledge with its receipt of Houska's report. In short, even if the Limited Warranty is effective and despite the absence of evidence regarding when and whether Defendants refused to honor their warranty, it appears that Thompson's claims under that warranty would not be barred by the one-year statute of limitations contained therein.

In any event, the dispute as to whether Defendants effectively delivered the Limited Warranty and Terms & Conditions to Thompson such that these documents formed part of the bargain is a material issue of disputed fact that precludes summary judgment in favor of Defendants on the breach-of-contract claim. Because it is unclear whether the Limited Warranty applies, the Court finds no need to address at this point the enforceability of the arbitration clause or the other arguments raised by the parties concerning the terms of the Limited Warranty.

**B.      Whether the TCPA Claim Is Barred by the Statute of Limitations**

In its motion for summary judgment, Defendants assert several bases for dismissal of the TCPA claim, including that the claim is barred by the one-year statute of limitations. The Tennessee Consumer Protection Act contains its own express statute of limitations, which provides that any action commenced under the Act "shall be brought within one (1) year from a person's discovery of the unlawful act or practice." Tenn. Code Ann. § 47-18-110.

Thus, the Tennessee legislature has determined that a plaintiff's TCPA claim accrues at time of the "discovery of the unlawful act or practice," thereby making applicable the "discovery rule" first applied

---

[1] There seems to be no dispute that the tiles did not live up to Thompson's expectations or Hauk's representations. It is not clear at this stage why not. Hauk's testimony that the tiles did well in other coastal installations suggests maybe this batch of tiles in particular was defective. On the other hand, Defendants seem to be suggesting that the Bahamas environment was somehow "unusually" salty. Houska's report suggests that Hauk was just wrong in asserting that the colorized T304 tiles was equivalent to the T316 in terms of corrosion resistance.

in Tennessee over thirty years ago in *Teeters v. Currey*, 518 S.W.2d 512 (Tenn. 1974). *Heatherly v. Merrimack Mut. Fire Ins. Co.*, 43 S.W.3d 911, 916 (Tenn. Ct. App. 2000). The Tennessee Supreme Court recently restated the discovery rule as follows:

> It is now well-established that, where applicable, the discovery rule is an equitable exception that tolls the running of the statute of limitations until the plaintiff knows, or in the exercise of reasonable care and diligence, should know that an injury has been sustained. The discovery rule does not, however, toll the statute of limitations until the plaintiff actually knows that he or she has a cause of action. The plaintiff is deemed to have discovered the right of action when the plaintiff becomes aware of facts sufficient to put a reasonable person on notice that he or she has suffered an injury as a result of the defendant's wrongful conduct. Were statutes of limitations strictly applied, plaintiffs would be required to sue to vindicate a non-existent wrong, at a time when the injury is unknown and unknowable. The discovery rule is intended to prevent the inequity such a strict application of the rule would produce.

*Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 621 (Tenn. 2002) (internal quotation marks and citations omitted). "Whether the plaintiff exercised reasonable care and diligence in discovering the injury or wrong is usually a fact question for the jury to determine." *Wyatt v. A-Best Co.*, 910 S.W.2d 851, 854 (Tenn. 1995); *McIntosh v. Blanton*, 164 S.W.3d 584, 586 (Tenn. Ct. App. 2004).

The question presented here is when did Thompson "discover" Defendants' unlawful act? In that regard, Defendants insist that Thompson's cause of action accrued no later than April 2008, when the plaintiff first became aware of problems with the tiles. Thompson insists that it did not "discover" any wrongdoing by Defendants, and thus the statute did not begin to run, until it received Houska's report stating that Hauk's representations concerning the qualities of the T304 were false.

Based on the undisputed facts, the Court finds that the plaintiff's claim did not accrue until it had reason to believe that Hauk misrepresented the qualities of the T304 tiles. Specifically, Thompson's claim under the TCPA—as distinct from its contract and warranty claims—is not simply premised on an allegation that the tiles themselves were defective, but on the assertion that Hauk misrepresented the qualities and characteristics of the tiles. Thompson first noticed a "slight discoloration" of the tiles around April 2008, shortly after their installation. When Steve Lainhart spoke with Hauk about this issue, Hauk asked him to send a sample tile for testing. Lainhart did so, and Hauk forwarded the tile for testing to Poligrat in Germany. On June 26, Hauk sent an e-mail to Brown with the results of the testing. In his e-mail, Hauk explained that the tiles were not defective but had failed due to improper installation that resulted in exposure to metal filings, and "unusual" salt deposits from the ocean. At that point, Thompson

arguably had cause to believe the salt-air environment might be causing the problems with the tiles, and was put on notice that Hauk's representation that the tiles should resist corrosion might not be true. Thompson filed suit on June 18, 2009, less than a year after its receipt of the June 26, 2008 e-mail.  On that basis, the Court finds that Thompson's TCPA claim is not barred by the one-year statute of limitations.

      **C.**      **Whether Plaintiff's Proof Supports an Inference of Intentional Misrepresentation**

To recover on a theory of intentional misrepresentation, Thompson must show "a statement of an existing or past material fact, made [by Hauk] with knowledge of its falsity or with reckless disregard of the truth." *Fowler v. Happy Goodman Family*, 575 S.W.2d 496, 499 (Tenn. 1978).  *See Also   Dobbs v. Guenther*, 846 S.W.2d 270, 274 (Tenn. Ct. App. 1992).  The Tennessee Consumer Protection Act ("TCPA") authorizes "[a]ny person who suffers an ascertainable loss of money  . . . as a result of the use or employment by another person of an unfair or deceptive act or practice" to "bring an action individually to recover actual damages."  Tenn. Code Ann. § 47-18-109(a)(1).  Neither the Tennessee courts nor the federal courts have defined the terms "unfair" and "deceptive" with any certainty, but the Tennessee Supreme Court has accepted the contention that an intentional misrepresentation can constitute an "unfair" or "deceptive" act or practice.  *Ganzevoort v. Russell*, 949 S.W.2d 293, 298–99 (Tenn. 1997). Moreover, the TCPA expressly deems it to be an unfair and deceptive act to "represent[] that goods or serves have . . . characteristics . . . that they do not have" and to "[r]epresent[] that goods . . . are of a particular standard, quality or grade . . . if they are of another."  Tenn. Code Ann. § 47-18-104(5) & (7).  In other words, "proof of a misrepresentation can be an element of a claim brought pursuant to the Tennessee Consumer Protection Act."  *Dobbs v. Guenther*, 846 S.W.2d 270, 274 (Tenn. Ct. App. 1992) (citations omitted).  Under Tennessee law, summary judgment is generally inappropriate when fraud is alleged as the basis of a claim.  *Long v. State Farm Fire & Casualty*, 510 S.W.2d 517, 519 (Tenn. Ct. App. 1974).

In the present case, Thompson has presented evidence that Hauk's representations to Brown as to the quality of the T304 steel and its comparability with T316 in terms of the ability to withstand the corrosive effects of salt air and a tropical, coastal environment were actually false.  Thompson has also offered evidence from which an inference may be drawn that Defendants had a financial incentive to push

the sale of the T304 tiles, despite the fact that Millennium's per-tile profit on the T304 tiles was less than it would have been on the T316 tiles. Defendants, on the other hand, argue that there is no evidence from which a jury could conclude that Hauk's statements were willfully false or that Hauk had knowledge of their falsity.

In support of that assertion, Defendants offer Hauk's affidavit in which he attests that, at the time he made the statement (which he does not deny making), he believed, based on his industry experience, that the colorized T304 tiles provided adequate corrosion protection for a coastal installation, and he believed "in reliance on independent analysis" that the colorized T304 steel was equivalent to the uncolored T316 steel "in terms of corrosion resistance." (Hauk Aff. ¶ 13.) Hauk further maintains that he exercised reasonable care in obtaining and communicating this information and that he continues to believe the statement to be true. (*Id.*)

The problem with Hauk's position is that he offers no objective evidence to corroborate his allegations. For instance, there is no written documentation of the purported "independent analysis" upon which he supposedly relied in making this assertion. Moreover, the assertion is in clear contradiction of his company's own product specifications, which recommend T316 tiles for coastal installations. In short, the only evidence Defendants have to refute Thompson's allegations of an intentional (or reckless) misrepresentation is Hauk's own claim that he was telling the truth, or believed himself to be telling the truth.

A jury, however, might choose not to credit Hauk's testimony. If a jury disbelieves Hauk and draws all inferences from the other available evidence in favor of Thompson, the jury could conclude that Hauk willfully or recklessly misrepresented the qualities and characteristics of the T304 steel. On that basis, the Court concludes that Defendants are not entitled to summary judgment in their favor on the claims of fraudulent misrepresentation or violation of the TCPA. *Cf. Jarmakowicz v. Suddarth*, No. M1998-00920-COA-R3-CV, 2001 WL 196982, at *11 (Tenn. Ct. App. Feb. 28, 2001) ("[W]here witnesses contradict each other, it is sufficient that one witness's testimony, if believed by the factfinder, establishes facts and circumstances sufficient to convince a reasonable person that fraud has occurred." (citation

omitted)).  The motion for summary judgment as to those claims will likewise be denied.[2]

The Court further observes that the fraud claim may stand even if Defendants prove delivery of the Limited Warranty, as "Tennessee law gives no effect to disclaimers in the presence of fraud."  *First Nat'l Bank of Louisville v. Brooks Farms*, 821 S.W.2d 925, 928 (Tenn. 1991) (citations and internal quotation marks omitted)

### C.      The Claim for Negligent Misrepresentation

The Tennessee Supreme Court has stated that liability for negligent misrepresentation will arise when:

> (1) the defendant is acting in the course of his business, profession, or employment, or in a transaction in which he has a pecuniary (as opposed to gratuitous) interest; and

> (2) the defendant supplies faulty information meant to guide others in their business transactions; and

> (3) the defendant fails to exercise reasonable care in obtaining or communicating the information; and

> (4) the plaintiff justifiably relies upon the information.

*Robinson v. Omer*, 952 S.W.2d 423, 427 (Tenn. 1997).   In their motion for summary judgment, Defendants argue only that Thompson has no proof that Hauk failed to exercise reasonable care or competence in obtaining or communicating information regarding the qualities and characteristics of the colorized T304 steel to Thompson.  The plaintiff, in response, points out that Hauk's assertion that he exercised reasonable care is premised solely upon his own self-serving affidavit.  In his affidavit, Hauk does not identify any specific documentation or information upon which he relied in making the assertion that the T304 was equivalent to the T316 steel, other than the fact that T304 tiles had been successfully installed in other coastal  environments around the world.  The Court finds that a jury could reasonably infer, based on the evidence in the record, that Hauk was negligent in supplying false information to Thompson.

The Court further notes, however, that claims of negligent misrepresentation are generally brought where there is no privity of contract and therefore no basis for recovery for breach of contract,

---

[2] To the extent Defendants are attempting to argue that Thompson does not have standing to assert a misrepresentation claim because Hauk never made any representations of any kind to any Thompson employee, that argument too is unavailing.  There is no dispute that Thompson had delegated to Larry Brown the duties of selecting materials for construction of the Bahamas residence, and that Brown was acting as agent or representative of Thompson in his dealings with Defendants.

and that Thompson's contract claims will likely supersede the negligent misrepresentation claim. In particular, if a jury finds that the Limited Warranty applies, it will effectively bar any claims of negligent misrepresentation. The UCC's statute of frauds provides that: "Terms . . . set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement." Tenn. Code Ann. § 47-2-202. Hauk's verbal guarantee, which could be construed as an express warranty of fitness for a particular purpose, is completely contradicted by language in the written Limited Warranty stating that Millennium will repair or replace any parts that contain manufacturing defects that adversely affect their performance, and that "**THIS LIMITED WARRANTY IS PROVIDED IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED. WE SPECIFICALLY DISCLAIM ANY IMPLIED WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE OR MERCHANTABILITY.**" (Doc. No. 18-4, at 3.) Tennessee courts have upheld such disclaimers and barred introduction of contradictory language under similar circumstances. *See, e.g., Perryman v. Peterbilt of Knoxville, Inc.*, 708 S.W.2d 403, 405 (Tenn. Ct. App. 1985) (in the context of a suit brought by the buyer against the seller of a used truck, holding that alleged statements by the seller's agent to effect that the truck was completely fit for long-haul purposes and that seller would stand behind truck even though there was no written warranty were in contravention of written disclaimer of warranties contained in the offer of purchase and, as such, were in violation of the parol-evidence rule and could not be considered as evidence).

IV.    **CONCLUSION**

For the reasons set forth herein, Defendants motion for summary judgment will be denied. An appropriate Order will enter.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge